IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01820-GPG-KAS

JOHN MCNAMARA,

      Plaintiff,

v.

SCOTT SIEGFRIED,
CHRIS SMITH,
GWEN HANSEN-VIGIL,
KATIE LLOYD,
JOHN MICHAEL PRESKORN,
SONJA MCKENZIE,
CAITLIN HOLZFASTER,
MARK FERRANDINO,
BARBARA BROHL,
STEVE HOOPER, and
FRANCINE MENDEZ, also known as Francine Gonzalez,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendant Barbara Brohl's **Motion to Dismiss** [#35],[1] Defendant Francine Gonzales's **Motion to Dismiss** [#47],[2] Defendants Scott Siegfried, Chris Smith, Gwen Hansen-Vigil, Katie Lloyd, John Michael Preskorn, Sonja McKenzie, and Caitlin Holzfaster's **Motion to Dismiss** [#51], and Defendant Heidi

_____

[1] "[#35]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] Although Plaintiff spells this Defendant's name with a "z", the Court utilizes the spelling provided by this Defendant in her briefs, with an "s". *See, e.g.*, *Motion* [#47] at 1.

Humphreys' **Motion to Dismiss** [#62][3] (collectively, the "Motions"). Plaintiff filed

Responses [#70, #71] in opposition to the Motions, and Defendants filed Replies [#72,

#73]. The Motions [#35, #47, #51, #62] have been referred to the undersigned for a

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and

D.C.COLO.LCivR 72.1(c)(3). *See* [#69]. The Court has reviewed the briefs, the entire

case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS**

that the Motions [#35, #47, #51, #62] be **GRANTED**.

## I. Background

Plaintiff proceeds in this matter as a pro se litigant.[4] He is the parent of a child who

attended school in the Cherry Creek School District Number 5 in Colorado. *Compl.* [#1]

at 1.[5] Defendant Scott Siegfried ("Siegfried") was the superintendent of this school district

---

[3] Defendant Heidi Humphreys is the successor of Defendant Mark Ferrandino as the Executive Director of the Colorado Department of Revenue. *Motion* [#62] at 1. Plaintiff has filed a Notice [#60] requesting entry of default against Defendant Ferrandino, and Defendant Humphreys filed a Response [#64] in opposition. The Court addresses this issue, as well as whether Defendant Humphreys has properly been substituted for Defendant Ferrandino in this lawsuit, in Section III.B.2.a. below.

[4] Generally, the Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, Plaintiff is a disbarred attorney. *See McNamara v. Brauchler*, 570 F. App'x 741, 743 n.2 (10th Cir. 2014) ("McNamara is no longer a licensed attorney, as he was disbarred in 2013."). The Tenth Circuit Court of Appeals has held that Plaintiff "is not entitled to have his filings liberally construed because he is a trained attorney." *Id.* at 743. The Circuit reached this decision because it could find no reason to hold a disbarred attorney "to a less stringent standard than other legally trained individuals." *Id.* at 743 n.2. Therefore, Plaintiff is not entitled to special license or liberal construction of his pleadings or briefs in this lawsuit.

[5] For the purposes of resolving the Motions [#35, #47, #51, #62], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, to the extent that Plaintiff provides additional allegations or possible new claims in his briefs, the Court notes that a party may not amend his complaint in motion briefing. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept.

from 2018 to 2021. *Id.* at 2. Defendant Chris Smith ("Smith") is the current superintendent. *Id.* Defendant Sonja McKenzie ("McKenzie") is an attorney for the school district. *Id.* Defendant Caitlin Holzfaster ("Holzfaster") is a "secretary or clerk working directly under" Defendant McKenzie. *Id.* Defendant Gwen Hansen-Vigil ("Hansen-Vigil") is the principal of Eaglecrest High School, which is part of Cherry Creek School District Number 5. *Id.* Defendant Katie Lloyd ("Lloyd") is the vice principal of Eaglecrest High School. *Id.* Defendant John Michael Preskorn ("Preskorn") is a math teacher at Eaglecrest High School. *Id.* at 3.

In addition, Plaintiff sues several Defendants (the "State Defendants") who are not connected to the school. Defendant Heidi Humphreys is the current Executive Director of the Colorado Department of Revenue and is the immediate successor to Defendant Mark Ferrandino in that role. *Id.*; *see Motion* [#62] at 1. Defendant Barbara Brohl ("Brohl") is another former Executive Director of the Colorado Department of Revenue. *Compl.* [#1] at 3. Defendant Steve Hooper, also listed in some places as C. Stephen Hooper ("Hooper"), is "a Colorado state employee hired as a records custodian/records witness for the Colorado Department of Revenue, Division of Motor Vehicles."[6] *Id.* Defendant Francine Gonzales (formerly Francine Mendez) "is a Colorado state employee hired as a records custodian/records witness for the Colorado Department of Revenue, Division of Motor Vehicles." *Id.*

---

30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

[6] Defendant Hooper has not appeared in this lawsuit and is not a moving party in any of the Motions [#35, #47, #51, #62]. *See Order to Show Cause* [#76].

Plaintiff's Claim One asserts retaliation in violation of the First Amendment. *Id.* at 7. Plaintiff alleges that, at some unidentified time in the past, he had attempted to contact Cherry Creek School District school administrators regarding his son's middle school math and trigonometry teachers and about when the Preliminary Scholastic Aptitude Test ("PSAT") would be offered at Eaglecrest High School. *Id.* at 9. He asserts that Defendants Preskorn, Lloyd, Hansen-Vigil, Siegfried, and Smith later conspired to retaliate against him for these efforts, resulting in the tampering of his son's high school calculus grade. *Id.* He states that this grade was lowered "dramatically with a month and a half to go in his son's senior year of high school and [these Defendants] broke promises to provide opportunities for [Plaintiff's] son to improve his calculus grade[.]" *Id.* at 10. Plaintiff states that Defendants Siegfried and Hansen-Vigil "were trying to 'fix' Eaglecrest's test scores on the PSAT/National Merit Scholarship Test, by only telling students in the very top percentage of [Plaintiff's] son's high school class about when they could take the PSAT, so that lower ranked students would not have the opportunity to take the test and lower Eaglecrest High School's scoring statistics." *Id.* Plaintiff asserts that his emails to Cherry Creek School District officials regarding his concerns about the two math teachers and about when the PSAT would be offered were constitutionally protected free speech. *Id.* Plaintiff states that the retaliation by Defendants Preskorn, Lloyd, Hansen-Vigil, Holzfaster, McKenzie, Smith, and Siegfried further consisted of his not being "allowed to see graded tests and quizzes and the answer keys to such exams, to see why his son's calculus grade dropped so precipitously in the last month of school and which seriously endangered his son's admission into a university." *Id.* Plaintiff also states that "Cherry Creek School District dishonestly and unethically failed to notify [him] of his statutory right

to a hearing to challenge the accuracy of [his] son's academic record" under the Family Educational Rights and Privacy Act ("FERPA"). *Id.*

Plaintiff's Claim Two asserts negligence and negligence per se against the seven school Defendants, i.e., Siegfried, Smith, McKenzie, Holzfaster, Hansen-Vigil, Lloyd, and Preskorn (collectively, "School Defendants"). *Id.* at 11-14. Plaintiff states that Defendant Preskorn was obligated to comply with Colorado Department of Education teaching standards but failed to do so "with respect to teaching [Plaintiff's] son the mathematical subject calculus at Eaglecrest High School, resulting in [Plaintiff's] son almost losing his admission to Florida State University." *Id.* at 11. Defendant Preskorn allegedly "said he would take steps to help [Plaintiff's] son get a better grade in calculus and then reneged on the promises and refused to show [Plaintiff] his son's graded calculus tests," purportedly in violation of the FERPA. *Id.* Plaintiff also states that Defendant Preskorn did not respond to his records requests under the Colorado Open Records Act ("CORA"). *Id.*

Plaintiff explains that Defendants Hansen-Vigil and Lloyd were Defendant Preskorn's supervisors at Eaglecrest High School and, as such, they were "obligated to make sure that teachers at Eaglecrest High School comply with the Colorado Department of Education teaching standards and regulations." *Id.* at 12. Plaintiff asserts that Defendant Preskorn did not comply with the regulations, and that "Defendants Hansen-Vigil and Lloyd negligently supervised Defendant Preskorn [by] allowing Preskorn to perform poorly in teaching calculus to a student who was asking for help and his parent . . . who was also asking for help." *Id.* Plaintiff states that "Defendants Preskorn, Lloyd and Hansen-Vigil all declined to respond to the written request" for documentation regarding his son's assignments, in violation of CORA and FERPA. *Id.* Due to their failure to

respond, Plaintiff argues that Defendants Preskorn, Lloyd, and Hansen-Vigil "were negligent and negligent per se in failing to respond to [Plaintiff's] records requests." *Id.*

Also, in connection with Claim Two, Plaintiff states that Defendants Siegfried and Smith are supervisors of Defendants Hansen-Vigil, Lloyd, and Preskorn. *Id.* at 13. Accordingly, due to Defendant Preskorn's purported failure to follow teaching standards, and Defendants Lloyd's and Hansen-Vigil's failures to supervise Defendant Preskorn, Plaintiff asserts that Defendants Siegfried and Smith negligently supervised Defendants Preskorn, Lloyd, and Hansen-Vigil. *Id.* Plaintiff further states that Defendants Preskorn, Hansen-Vigil, and Lloyd asked Defendant McKenzie, legal counsel for the school district, to respond to Plaintiff's records request. *Id.* Plaintiff alleges that Defendant McKenzie, "asked a clerk," i.e., Defendant Holzfaster, to "handle legal tasks . . ., including giving legal opinions [on the Cherry Creek School District's behalf] to a lay person regarding statutory requests for government educational records." *Id.* In doing so, Defendant McKenzie purportedly "violated several Colorado attorney ethics rules . . . in a deliberate effort to mislead [Plaintiff] and deny him his due process rights to receive educational records for his son, in order for [Plaintiff] to help his son." *Id.* at 14. Plaintiff asserts that Defendant McKenzie "was negligent and negligent per se in responding to statutory records requests from [Plaintiff] and negligently allow[ing] an unlicensed person under [her] supervision to practice law in the State of Colorado." *Id.* Plaintiff further asserts that Defendant Holzfaster "was negligent and negligent per se in practicing law without a license in Colorado on behalf of a third party and in providing incorrect legal information and not providing required constitutional notice and due process." *Id.* Finally, Plaintiff

avers that Defendants Siegfried and Smith "were negligent in supervising an attorney . . . and her clerk . . . in their legal representation of Cherry Creek School District." *Id.*

Plaintiff's Claim Three has no connection to the claims concerning Plaintiff's son's education or the Cherry Creek School District. Claim Three, rather, asserts violation of Plaintiff's Fourteenth Amendment Due Process rights and is asserted against Defendants Brohl, Gonzales, and Hooper. *Id.* at 14-16. Plaintiff states that "[t]he Colorado Department of Revenue surreptitiously took action against [his] driver's license by deliberately sending notices of action taken . . . to the wrong address and failing to specify what specific activity by [him]" caused action to be taken. *Id.* at 15. Due to this action against his license, Plaintiff "was [allegedly] arrested and ticketed multiple times in Colorado for driving under suspension." *Id.* Plaintiff asserts that, on three occasions, the charges were dismissed "because of the constitutional violations by the Colorado Department of Revenue in taking action against [Plaintiff's] license." *Id.* Further, "[d]espite this, and after request to [Defendant] Brohl herself, the Colorado Department of Revenue refused to remove all suspension/revocation/cancellation or denial actions taken against [Plaintiff's] license." *Id.*

Plaintiff also alleges that Defendants Hooper and Gonzales, "acting under the color of state law as the records custodian[s] for the Colorado Department of Revenue denied" and continue to deny "his constitutional right to procedural due process of a notice and hearing[.]" *Id.* at 15-16. Plaintiff further alleges that Defendants Hooper and Gonzales knew "that Colorado notices regarding [Plaintiff's] driver's license were not being sent to the correct address." *Id.* Further, Defendant Brohl, who was also allegedly aware that the notices were being sent to an incorrect address, "is denying and/or conspiring to assist in

7

denying [Plaintiff] his constitutional right" to notice and a hearing. *Id.* at 16. Plaintiff asserts that Defendants Hooper, Gonzales, and Brohl's actions are preventing him "from obtaining a driver's license in his current state of residence, Florida, and [Plaintiff] may face higher automobile insurance rates as a result of the dishonest conduct of [D]efendants." *Id.*

Plaintiff's Claim Four asserts a request for mandamus relief from Defendant Ferrandino stemming from the purported Fourteenth Amendment Due Process violation discussed in Claim Three above. *Id.* at 17-18. He seeks an order compelling Defendant Ferrandino "to perform his duties as the Executive Director of the Colorado Department of Revenue, and the [Colorado Department of Revenue's] Motor Vehicle Division, and remove all records of any suspension, revocation, denial or cancellation of [his] driver's license and reinstate his driver's license/driving privilege immediately[.]" *Id.* at 18. Plaintiff contends "it was improper for the Colorado Department of Revenue to take any action against [Plaintiff's] driver's license for an alleged failure to have proof of insurance on July 19, 2010, or an alleged failure to pay child support, since neither of those allegations have appropriate supporting documentation and both of those allegations are the result of government employee negligence, fraud and criminal behavior." *Id.* at 18.

In addition to the requested mandamus relief against Defendant Ferrandino, Plaintiff seeks unspecified damages from all Defendants. *Id.* at 11, 14, 16, 18-19. In the present Motions [#35, #47, #51, #62], the moving Defendants seek dismissal of all claims asserted against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. Standard of Review

### A.      Fed. R. Civ. P. 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). In other words, "[a] Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). Because federal courts are tribunals of limited jurisdiction, the Court must establish a statutory basis to exercise jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The Court may only exercise jurisdiction "in the presence rather than the absence of statutory authority." *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir. 1994) (quoting *Wyeth Lab'ys v. U.S. Dist. Ct.*, 851 F.2d 321, 324 (10th Cir. 1988)). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

"Rule 12(b)(1) challenges may take two different forms." *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff*, 65 F.4th at 507 (citing *Holt v. United States*, 46 F.3d 1000, 1002

(10th Cir. 1995)). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment[.]" *SK Fin. SA*, 126 F.3d at 1275. "In such instances, a court has discretion to consider affidavits and other documents to resolve the jurisdictional question." *Graff*, 65 F.4th at 507 (citing *Holt*, 46 F.3d at 1003).

**B.      Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders

naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III. Analysis

### A.   The School Defendants

Plaintiff asserts that the School Defendants "lowered his son's calculus grade dramatically" as retaliation for Plaintiff's past statements regarding his son's middle school math teachers and the PSAT schedule. *Compl.* [#1] at 9-10. Additionally, Plaintiff contends that Defendants Hansen-Vigil, Lloyd, Siegfried, and Smith were negligent and negligent per se as supervisors by allowing Defendant Preskorn's poor performance as a calculus teacher to continue. *Id.* at 12. Plaintiff also contends that Defendants Hansen-Vigil, Lloyd, and Preskorn negligently failed to respond to and that Defendants McKenzie and Holzfaster were negligent in their handling of Plaintiff's CORA requests concerning his son's performance in math and the PSAT's administration. *Id.* at 12-14.

### 1.   Claim One: First Amendment Retaliation

The School Defendants solely seek dismissal under Fed. R. Civ. P. 12(b)(1), but the Court reviews their untimeliness argument under Fed. R. Civ. P. 12(b)(6). *Motion* [#51] at 1, 5; *see Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x 463, 465 (10th Cir. 2009) ("Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear

that the right sued upon has been extinguished.'") (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).  The Court begins, as it must, with the School Defendants' arguments which fall under Fed. R. Civ. P. 12(b)(1). *See Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018) ("Where, as here, a defendant seeks dismissal under Rule 12(b)(1) and Rule 12(b)(6) in the alternative, 'the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction.'") (quoting *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996)).

The School Defendants argue that Plaintiff lacks standing to sue with respect to his First Amendment retaliation claims because "the only injury [Plaintiff] alleges to himself was [that] the School District failed to notify him of his 'statutory right to a hearing to challenge the accuracy of [his] son's academic record.'" *Motion* [#51] at 8 (quoting *Compl.* [#1] at 10). The School Defendants assert that, while Plaintiff cites FERPA to support the existence of his statutory rights, "FERPA does not confer any enforceable rights to a parent." *Motion* [#51] at 8 (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287-90 (2002)). Further, the School Defendants argue that Plaintiff lacks standing to bring suit on his son's behalf. *Motion* [#51] at 9. For the reasons stated below, the Court finds that it does not have subject matter jurisdiction over Plaintiff's First Amendment retaliation claim; therefore, the Court need not consider the School Defendants' timeliness argument as to this claim.

"The standing inquiry requires [the Court] to consider 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Sac & Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S.

490, 498 (1975)). "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560-61). Because Plaintiff invokes federal jurisdiction, he "bear[s] the burden of demonstrating that [he has] standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021) (citing *Lujan*, 504 U.S. at 561).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. For an injury to be concrete, "it must actually exist." *Id*. at 340.

Additionally, Plaintiff must satisfy three principles to establish the existence of prudential standing. *See Sac & Fox Nation*, 213 F.3d at 573. "First, a plaintiff generally must assert [his] own rights, rather than those belonging to third parties." *Id*. (citing *Warth*, 422 U.S. at 499). "Second 'a generalized grievance' shared by a large class of citizens normally does not warrant a federal court's exercise of jurisdiction." *Id*. (quoting *Warth*, 422 U.S. at 499). "Third, the interests which a plaintiff seeks to protect must 'arguably [be] within the zone of interests to be protected by the statute or constitutional guarantee.'" *Id*. (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).

Although Plaintiff asserts a First Amendment retaliation claim, he does not allege that the School Defendants' actions stopped him from continuing to exercise his free

speech. Plaintiff plausibly asserts only one injury-in-fact: he was not provided individual notice of his right to a hearing to challenge the validity of his son's academic records as required under FERPA. *Compl.* [#1] at 10. However, even if the School Defendants violated FERPA, violations of FERPA "are not actionable under § 1983" because "FERPA does not provide for a private right of action." *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1084 (D.N.M. 2010). Thus, Plaintiff fails to allege an actual injury. *See Warth*, 422 U.S. at 500 (stating that an actual injury "required by Art[icle] III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)). Additionally, Plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo, Inc.*, 578 U.S. at 342. Accordingly, the Court finds that Plaintiff has failed to sufficiently allege an injury-in-fact with respect to his First Amendment retaliation claim.

Additionally, to the extent Plaintiff brings claims against the School Defendants for injury caused to his son, Plaintiff's claims are barred. Plaintiff fails to establish prudential standing because Plaintiff does not assert his own rights, but rather those of his son. *See I.G. ex rel. Grunspan v. Jefferson Cnty. Sch. Dist. ex rel. Bd. of Educ.*, 452 F. Supp. 3d 989, 999 (D. Colo. 2020) ("A plaintiff may not bring a § 1983 claim that is derivative of another person's § 1983 claim."). Any injury suffered by Plaintiff's son due to the manipulation of grades is a potential violation of his son's rights, not those of Plaintiff. Accordingly, the Court **recommends** that Plaintiff's First Amendment retaliation claim against the School Defendants be **dismissed without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (noting longstanding precedent

"that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice.").

### 2.    Claim Two: Negligence and Negligence Per Se

The School Defendants argue that Plaintiff's negligence and negligence per se claims are untimely. *Motion* [#51] at 6. The School Defendants assert that a two-year statute of limitations applies to Plaintiff's claims and that the limitations "expired before [Plaintiff] filed suit on July 17, 2023." *Id.* Defendants state that Plaintiff's "negligence claim regarding supervision of [Defendant] Preskorn's teaching . . . arose no later than May 11, 2021." *Id.* at 7. Further, the School Defendants argue that Plaintiff's "assertions of negligence based on his open records request arose . . . no later than July 1, 2021." *Id.* In support, the School Defendants point to Plaintiff's Exhibit A [#5-1] to the Complaint [#1], which shows that Defendant Holzfaster "provided the School District's response in May or June 2021 and that [Defendant] McKenzie wrote him a letter regarding the request on July 1, 2021." *Id.* Accordingly, Defendants assert that Plaintiff needed to file his lawsuit "by July 2, 2023" to satisfy limitations period. *Id.* In the alternative, the School Defendants argue that they are entitled to qualified immunity. *Id.* at 10.

"If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under [R]ule 12(b)(6)." *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1289 (D.N.M. 2015) (citing *Rohner v. Union Pac. R.R. Co.*, 225 F.2d 272, 273-75 (10th Cir. 1955)). In Colorado, "all actions against any public or government entity or any employee of a public or governmental entity" must be brought "within two years after the cause of action accrues[.]" Colo. Rev. Stat. § 13-80-102(1)(h). "A cause of action accrues on the date

both the underlying injury and its cause are known or should have been known by the plaintiff by the exercise of reasonable diligence." *Grimes v. U.S.A. Boxing, Inc.*, No. 22-cv-00337-LTB-GPG, 2022 WL 3099213, at *3 (D. Colo. June 30, 2022) (citing Colo. Rev. Stat. § 13-80-108(1)).

The Court notes that Plaintiff has not provided any dates within the Complaint [#1] regarding the actions of the School Defendants. However, Plaintiff consistently references Exhibit A in his Complaint [#1] which contains dates pertinent to Plaintiff's claims. *Compl.* [#1] at 7 ("Plaintiff incorporates . . . the Notice of Claim attached hereto as Exhibit A[.]"); *see Ex. A* [#5-1].[7] Regarding Plaintiff's negligence claim against Defendants Preskorn, Hansen-Vigil, Lloyd, Siegfried, and Smith, Plaintiff's allegations relate to Defendant Preskorn's grading of Plaintiff's son's calculus assignments and tests. *Compl.* [#1] at 12-13. Exhibit A [#5-1] shows that Plaintiff's son received his final transcript on May 11, 2021. *Ex. A* [#5-1] at 24. On this date, Plaintiff's son was told that his final grade of a "70" in Defendant Preskorn's class would appear as a "C-." *Id.* Subsequently, Plaintiff sent an email to Defendants Hansen-Vigil, Lloyd, and Preskorn, stating that, "[i]f [his son's] calculus grade is still a 'C-,' and not a 'C' as of 8:00 am on Friday May 14," he would issue a statutory notice of claim regarding his negligence claims. *Id.* at 26. Thus, Plaintiff was aware of his son's final grade by May 14, 2021, at the latest, and any negligence claim against Defendant Preskorn or his supervisors had to be brought by May 15, 2023.

---

[7] The Court considers Exhibit A [#5-1] when analyzing the statute of limitations argument because Plaintiff explicitly incorporates the document into the Complaint [#1]. *Compl.* [#1] at 7; *see Reid v. Pautler*, 36 F. Supp. 3d 1067, 1111 (D.N.M. 2014) (noting that "documents that the complaint incorporates by reference" can be considered when ruling on a 12(b)(6) motion (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 307, 322 (2007)).

Additionally, Plaintiff's requests for records pursuant to the Colorado Open Records Act, were denied, for the second time, by Defendant McKenzie on July 1, 2021. *Id.* at 37. Thus, Plaintiff was aware of his negligence claims pertaining to CORA against all the School Defendants on July 1, 2021, at the latest, and any negligence or negligence per se claim had to be brought by July 2, 2023. Because Plaintiff's lawsuit was filed on July 17, 2023, the Court finds that Plaintiff's negligence and negligence per se claims against the School Defendants are barred by the statute of limitations.

Accordingly, the Court **recommends** that Plaintiff's negligence and negligence per se claims against the School Defendants be **dismissed with prejudice**. *See Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice for claims that were time-barred).

## B.    The State Defendants

Plaintiff asserts that Defendants Brohl, Gonzales, and Hooper failed to provide him with the due process required under the Fourteenth Amendment before suspending his driver's license. *Compl.* [#1] at 14-16. Additionally, Plaintiff asserts that he is entitled to mandamus relief with respect to his driver's license because of the State Defendants' alleged failure to provide proper due process before suspending his license. *Id.* at 17-18.

### 1.    Claim Three: Fourteenth Amendment

Plaintiff asserts that Defendants Brohl and Gonzales are "denying [him] his constitutional right to the procedural due process of a notice and hearing."[8] *Compl.* [#1]

---

[8] Plaintiff also states that Defendant Brohl "is denying and/or conspiring to assist in denying [Plaintiff] his constitutional right." *Id.* However, Plaintiff does not allege any further facts to support a conspiracy, nor does Plaintiff mention a conspiracy again regarding Defendant Brohl. Thus, the Court finds that Plaintiff has failed to sufficiently allege a conspiracy claim. *See Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1203 (D. Colo. 2020) ("There is no requirement of an express agreement, nor must the conspirators know all of the details of the conspiracy, but the plaintiff

at 16. Defendants Brohl and Gonzales argue that Plaintiff's due process claims against them fail for multiple reasons. *Motion* [#35] at 4; *Motion* [#47] at 4. First, both Defendants assert that Plaintiff has failed to allege a specific action that was taken against his license. *Motion* [#35] at 5; *Motion* [#47] at 5. Second, they assert that Plaintiff failed to state what due process he was owed. *Motion* [#35] at 9; *Motion* [#47] at 9. Third, they argue that Plaintiff has failed to sufficiently plead personal involvement in the denial of his due process rights. *Motion* [#35] at 10; *Motion* [#47] at 10. Finally, they assert that they are entitled to qualified immunity. *Motion* [#35] at 13; *Motion* [#47] at 11.

To state a claim for denial of procedural due process, a plaintiff must allege that he had "(1) a constitutionally protected liberty or property interest," and (2) there was "a governmental failure to provide an appropriate level of process." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014) (citing *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1256 (10th Cir. 2008)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . . He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). In the context of deprivation of a driver's license, the Supreme Court noted, "[o]nce licenses are issued, . . . their continued possession may become essential in the pursuit of livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). Thus, the Supreme Court held that "[s]uspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."

---

must do more than make conclusory allegations of a conspiracy.") (internal citation and quotation marks omitted).

Additionally, "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege that each defendant personally participated in the alleged deprivation of a constitutional right." *Bertolo v. Benezee*, 601 F. App'x 636, 639 (10th Cir. 2015) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)). "[C]onclusory allegations are not sufficient to state a constitutional violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Additionally, "supervisory status, without more, does not create § 1983 liability." *Bertolo*, 601 F. App'x at 639 (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)). "[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Jenkins*, 81 F.3d at 995. "Rather, there must be an 'affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'" *Gallagher*, 587 F.3d at 1069 (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

Defendants Brohl and Gonzales' argument that Plaintiff fails to allege a specific action taken against his driver's license fails. *Motion* [#35] at 5; *Motion* [#47] at 5. The Court notes that Plaintiff's Complaint [#1] is somewhat unclear about what action was taken against his license; however, Plaintiff alleges that he "was arrested and ticketed multiple times in Colorado for driving under suspension." *Compl.* [#1] at 15. Because the underlying facts alleged by Plaintiff strongly suggest enforcement of a suspension of his license, the Court construes the action taken against Plaintiff's license as a suspension. *Id.* Thus, the Court finds that Plaintiff has adequately alleged a specific action taken against his driver's license.

However, Plaintiff does not sufficiently allege that Defendants Brohl and Gonzales "failed to provide an appropriate level of process." *Citizen Ctr.*, 770 F.3d at 916. Plaintiff alleges that the Department of Revenue sent notice regarding action against his driver's license. *Compl.* [#1] at 15. Aside from Plaintiff's conclusory statements that Defendants Brohl and Gonzales knowingly and "deliberately" sent the notices to an improper address, there is no support for the conclusion that either of them was aware that Plaintiff no longer resided at the address in question.[9] *Id.* Plaintiff does not allege that he notified the Department of Revenue, Defendant Brohl, or Defendant Gonzales of a change of address, nor does Plaintiff provide any supporting details for the Court to ascertain why the address was improper or outdated. Thus, even if Plaintiff were entitled to notice and the opportunity to request a hearing, the Court cannot conclude that either Defendant Brohl or Defendant Gonzales denied him an appropriate level of process given that notices were sent regarding action against Plaintiff's license. *Id.*

Further, Plaintiff does not sufficiently allege that Defendants Brohl or Gonzales personally participated in the violation of his Fourteenth Amendment rights. Plaintiff asserts that Defendants Brohl and Gonzales denied and are denying Plaintiff his right to due process because they "reviewed [Plaintiff's] records and observ[ed] that Colorado notices regarding his driver's license were not being sent to the correct address." *Compl.*

---

[9] The Court notes that, in his Response [#70], Plaintiff states that the District Attorney's Office previously "disclosed an e-mail from Francine Gonzale[s] to the deputy [district attorney] stating that [Defendant] Gonzales and [Defendant] Hooper had review[ed] [Plaintiff's] Colorado [d]riving record and determined that he had not received notice of punitive action being taken against his driver's license." *Response* [#70] at 8. However, because Plaintiff did not allege these fact in his Complaint [#1], the Court does not consider them further here. *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."). Regardless, even were the Court to consider this allegation, Plaintiff's claim would still fail for the reasons discussed in this section.

[#1] at 16. However, Plaintiff does not provide sufficient facts for the Court to conclude that either Defendant Brohl or Defendant Gonzales were responsible for sending the notices to the allegedly improper address. Further, the Court again notes that Plaintiff alleges notice was sent to a wrong address but fails to provide sufficient information regarding how either Defendant Brohl or Defendant Gonzales were directly aware of the notices being sent to an improper address. *Id.* at 15-16. To the extent Plaintiff alleges that Defendant Brohl violated his constitutional rights in her supervisory role, Plaintiff fails to establish an affirmative link demonstrating that administering the notice of suspension to an improper address was due to Defendant Brohl's exercise of control or direction. *Id.* at 16. Thus, the Court finds that Plaintiff has not adequately alleged personal participation in the asserted violation of his Fourteenth Amendment rights with respect to either Defendant Brohl or Defendant Gonzales.

Accordingly, the Court **recommends** that Plaintiff's due process claims against Defendant Brohl and Defendant Gonzales be **dismissed without prejudice**. *See, e.g.*, *Wilkins v. Denver Dep't of Safety*, 126 F. App'x 453, 454 (10th Cir. 2005) (affirming dismissal without prejudice of a pro se plaintiff's § 1983 claims for failure to state a claim).

### 2.    Claim Four: Mandamus

Plaintiff asserts a mandamus claim against the former Executive Director of the Colorado Department of Revenue, Defendant Ferrandino. *Compl.* [#1] at 17.  Defendant Humphreys argues that she is the proper Defendant, because she is the current Executive Director of the Colorado Department of Revenue. *Motion* [#62] at 1. Additionally, Defendant Humphreys asserts that the Court lacks subject matter jurisdiction over this claim and that Plaintiff has failed to state a right to mandamus relief. *Id.* at 4-5.

### a.      Defendants Ferrandino and Humphreys

Before considering the merits of the Motion [#62], the Court addresses two related preliminary issues: (1) whether Defendant Humphreys has been properly substituted for Defendant Ferrandino, and (2) whether default should be entered against the appropriate Defendant. Plaintiff has requested entry of default against Defendant Ferrandino for failure to respond to the Complaint [#1] within sixty days of service as required by Fed. R. Civ. P. 12(a)(2). *Notice* [#60] at 2-3. Defendants argue that Plaintiff is not entitled to entry of default against Defendant Ferrandino, because Defendant Humphreys has been substituted as Defendant Ferrandino's successor as the Executive Director of the Colorado Department of Revenue. *Response* [#64] at 3-4.

### i.      Substitution of Defendant Ferrandino

In his Complaint [#1], Plaintiff does not specify in what capacity he sues Defendant Ferrandino. However, when a plaintiff does not so specify, the Court will "look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability." *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993) (citing *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991)). The Court construes Plaintiff's claims against Defendant Ferrandino to be in his official capacity because Plaintiff only seeks mandamus relief against him, which can only be performed in Defendant Ferrandino's official capacity. *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1244 (10th Cir. 2007) (finding that the plaintiff sued the defendant in an official capacity because the plaintiff only sought mandamus relief).

Given that Defendant Ferrandino is sued only in his official capacity, the Court finds that Defendant Humphreys is properly substituted for Defendant Ferrandino

because, when a public officer resigns or ceases to hold office "while the action is pending[,] [t]he officer's successor is automatically substituted as a party."[10] Fed. R. Civ. P. 25(d); *see Soc'y of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 n.2 (10th Cir. 2005) (affirming the automatic substitution of two defendants with their successors in office pursuant to Fed. R. Civ. P. 25(d)).

### ii.   Entry of Default against Defendant Ferrandino

Plaintiff argues that Defendant Ferrandino's failure to respond to the Complaint [#1] entitles him to entry of default against Defendant Ferrandino. *Notice* [#60] at 2-3. Defendant Humphreys notes that, as the proper Defendant, she filed a timely responsive pleading and, thus, entry of default is inappropriate. *Response* [#64] at 2; *see Motion* [#62].

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "'Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of the court,' a district court maintains inherent power to exercise discretion in determining whether to enter a default." *Cox v. Dodd*, No. 18-cv-02328-CMA-NYW, 2019 WL 6496605, at *1 (D. Colo. Dec. 3, 2019) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)).

As stated above, Defendant Humphreys is properly substituted in place of Defendant Ferrandino. A Waiver of Service [#32] was sent on October 18, 2023, and Defendant Humphreys timely responded to the Complaint [#1] by December 18, 2023.

---

[10] The Court replaces Defendant Ferrandino's name with Defendant Humphreys' name where appropriate throughout the rest of this Recommendation.

*See Motion* [#62]. Given the appropriate substitution and the timely response, the Court finds that entry of default should not be entered. *See, e.g.*, *Pinales-Garcia v. McDonald*, No. 23-cv-02005-RMR-MDB, 2023 WL 7458364, at *2 (D. Colo. Sept. 28, 2023) (vacating an entry of default when the court granted substitution of the defendant against whom default was entered).

Accordingly, the Court **recommends** that Plaintiff's request in the Notice [#60] for entry of default against Defendant Ferrandino be **denied**.[11]

### b.    Mandamus Relief

Defendant Humphreys argues that the Court lacks subject matter jurisdiction over Plaintiff's mandamus request. *Motion* [#62] at 4. In the alternative, Defendant Humphreys asserts that Plaintiff's request for mandamus relief fails because Plaintiff "has failed to state a clear right to have the suspensions, revocations, and/or cancellations removed from his driving record." *Id.* at 5. Defendant Humphreys also argues that "the doctrine of laches bars the mandamus relief." *Id.* at 7. However, because, for the reasons stated below, the Court finds that Plaintiff has failed to state a right to mandamus relief, the Court does not address Defendant Humphreys' doctrine of laches argument.

### i.    Subject Matter Jurisdiction

Plaintiff brings this claim in federal court under both federal question and diversity jurisdiction. *Compl.* [#1] at 3. Defendant Humphreys notes that Plaintiff's claim regarding his request for mandamus relief, the sole claim against Defendant Humphreys, has "no sum in controversy." *Motion* [#62] at 4. Defendant Humphreys argues that, because there

---

[11] The Clerk of Court has already addressed Plaintiff's request in the Notice [#60] for entry of default with respect to Defendant Hooper. *See* [#74].

is no sum in controversy, "one element of diversity jurisdiction is not met," and thus, "the Court lacks subject matter jurisdiction." *Id.*

"Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A case arises under federal law if its 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Morris*, 39 F.3d at 1111 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)). "Thus, a district court may exercise jurisdiction when the cause of action is created by federal law or turns on a substantial question of federal law." *Morris*, 39 F.3d at 1111.

Additionally, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States[.]" 28 U.S.C. § 1332(a)(1). "The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute[.]" *Hernandez v. Chevron U.S.A., Inc.*, 347 F. Supp. 3d 921, 958 (D.N.M. 2018).

"Once a district court has jurisdiction, additional claims and parties can be added under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a), which grants the district courts jurisdiction 'over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of

the United States Constitution.'" *Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010) (quoting 28 U.S.C. § 1367(a)).

Plaintiff asserts that federal question jurisdiction under 28 U.S.C. § 1331 exists in this case. The Court agrees. Plaintiff asserts two claims which arise under federal law, including the Fourteenth Amendment claim regarding his license asserted against the three other State Defendants. Thus, the Court finds that there is federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a) over all state law claims, including the claim for mandamus relief.

When the Court dismisses all claims arising under federal law, as it has recommended doing above, the Court typically declines to exercise supplemental jurisdiction over remaining state law claims. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (quotation marks omitted).

In this case, Plaintiff also asserts that the Court maintains diversity jurisdiction over his claims as he is now a resident of Florida, and all Defendants are residents of either Colorado or California. *Compl.* [#1] at 3. Plaintiff does not allege a specific amount in controversy in the Complaint [#1], "[b]ut a complaint need not allege a specific sum in order to assert diversity jurisdiction." *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015) (citing *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000)). "[A] complaint that does not specify an amount must merely allege facts sufficient 'to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor[.]'" *Id.* (quoting *Adams*, 225 F.3d at 1183). The

Court notes that here that Plaintiff's claims do not clearly establish an amount in controversy that exceeds $75,000.00, although it is *possible* from the allegations that the amount in controversy could exceed this threshold.

Given that the existence of diversity jurisdiction is unclear, the Court finds that prudence supports the exercise of supplemental jurisdiction over Plaintiff's mandamus claim.

Accordingly, the Court **recommends** that Defendant Humphreys' Motion [#62] be **denied** with respect to her subject matter jurisdiction argument.

### ii.     Failure to State a Claim

Defendant Humphreys argues that "Plaintiff fails to state any right to have his driving record effectively wiped clean, let alone a clear entitlement." *Motion* [#62] at 6. She states that, "[a]ssuming the truth of [Plaintiff's] allegation that action was taken against his license for his failure to display proof of insurance or failure to pay child support, Plaintiff could have asked the state courts or child support enforcement to review that action." *Id.* Further, she argues that "since Plaintiff cites only the due process clause as support for the requested relief, . . . Plaintiff could bring . . . a claim under 42 U.S.C. § 1983 seeking injunctive relief." *Id.* at 7.

"In considering whether to issue a writ of mandamus, Colorado courts have generally applied a three-part test: (1) a plaintiff must have a clear right to the relief sought; (2) the defendant must have a clear duty to perform the act requested; and (3) there must be no other available remedy." *Smith v. Plati*, 258 F.3d 1167, 1178-79 (10th Cir. 2001) (citing *Sherman v. City of Colorado Springs Plan. Comm'n*, 763 P.2d 292, 295 (Colo. 1998)). Mandamus can be used to compel "a ministerial act, but is an inappropriate

remedy when the agency or officer has discretion." *Smith*, 258 F.3d at 1179 (citing *Ahern v. Baker*, 366 P.2d 366 (1961)).

Defendant Humphreys is correct that Plaintiff has failed to demonstrate that he is entitled to mandamus relief. *Motion* [#62] at 6. Plaintiff does not allege or provide any support that he has a clear right to the removal of an action against his driver's license. Even if Defendant Humphreys improperly suspended Plaintiff's driver's license without providing notice to Plaintiff, there is no support for the conclusion that Plaintiff is automatically entitled to reinstatement of his driver's license. Further, there is no clear duty requiring Defendant Humphreys to reinstate Plaintiff's license. In fact, as Plaintiff notes, he is now a citizen of Florida, and Defendant Humphreys is correct that the Department of Revenue is unable to issue a driver's license to a citizen of another state. *Compl.* [#1] at 3; *Motion* [#62] at 6 (citing Colo. Rev. Stat. § 42-2-107(1)(d)). Plaintiff also does not allege that no other remedy exists, and Defendant Humphreys notes that multiple avenues exist to challenge the suspension of his driver's license with the state courts or child support enforcement. *Motion* [#62] at 6. Therefore, the Court finds that Plaintiff has failed to establish a right to mandamus relief.

Accordingly, the Court **recommends** that Plaintiff's claim for mandamus relief against Defendant Humphreys be **dismissed without prejudice**. *See Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000) (dismissing without prejudice a plaintiff's state law claims for failure to state a claim).

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Plaintiff's request in the Notice [#60] for entry of default against Defendant Ferrandino be **DENIED**.

IT IS FURTHER **ORDERED** that the Clerk of Court shall update the electronic docket to remove Defendant Mark Ferrandino and replace him with Defendant Heidi Humphreys.

IT IS FURTHER **RECOMMENDED** that the Motions [#35, #47, #51, #62] be **GRANTED** and that Plaintiff's claims be **DISMISSED** as outlined above.[12]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 26, 2024                                        BY THE COURT:

---

[12] If this Recommendation is adopted in full, only Plaintiff's Claim Three under the Fourteenth Amendment against Defendant Hooper will remain. *See Order to Show Cause* [#76].

Kathryn A. Starnella
United States Magistrate Judge